```
         IN THE UNITED STATES DISTRICT COURT
            FOR THE DISTRICT OF MARYLAND
                                    :
UNITED STATES OF AMERICA
                                    :
     v.                             :  Civil Action No. DKC 20-2071
                                    :
REAL PROPERTY LOCATED IN POTOMAC,
MARYLAND COMMONLY KNOWN AS 9908     :
BENTCROSS DRIVE, POTOMAC, MD
20854 AND ALL APPURTENANCES,        :
IMPROVEMENTS, AND ATTACHMENTS
LOCATED THEREON, AND ANY PROPERTY   :
TRACEABLE THERETO
```

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this civil forfeiture action *in rem* are (1) a motion for entry of default judgment and (2) a motion for a final order of forfeiture filed by the United States. (ECF No. 15). The issues have been briefed, and the court now rules, no hearing being necessary. Local Rule 105.6. For the following reasons, the motions for default judgment and a final order of forfeiture will be granted.

**I.   Background**

The United States initiated this suit on July 15, 2020. (ECF No. 1). The operative first amended complaint, filed on August 25, 2020, asserts a civil forfeiture action *in rem* under 18 U.S.C. § 981(a)(1)(A) and (a)(1)(C) against "[r]eal property located in Potomac, Maryland, commonly known as 9908 Bentcross Drive, Potomac, MD 20854 and all appurtenances, improvements, and

attachments located thereon, and all rental and other income generated by the property, or any property traceable thereto" (the "Defendant Property").  (ECF No. 6, at 1).[1]

The Government alleges that the Defendant Property was acquired by the former President of The Gambia, Yahya Jammeh, and his wife, Zineb Jammeh, through a trust created by Ms. Jammeh—the MYJ Family Trust, also known as the MYJ Family Revocable Trust (the "Trust")—"with proceeds derived from illicit bribes and stolen funds misappropriated" by them.  (ECF No. 6, ¶¶ 1, 18).  It contends that the use of the proceeds of this unlawful conduct to purchase the Defendant Property subjects it to forfeiture.  (*Id.*, ¶ 3).

Neither Mr. Jammeh nor any other claimant has come forward to defend against the United States' action and the time for filing of any claim to contest this forfeiture has expired.  On May 26, 2021, default was entered against Defendant Property and "all

---

[1] The United States amended its original complaint to add the reference to "all rental and other income generated by the property" in the description of Defendant Property.  (*See* ECF Nos. 4, ¶ 4; 6-1, at 1).  The Government indicated that it might later move "for an order restraining any and all rent monies and directing that those funds be paid directly into an escrow account."  (ECF Nos. 4, ¶ 4; 6 ¶ 2).  It has not done so, nor has it identified any other property "traceable" to the real property at 9908 Bentcross Drive.  Consistent with the operative complaint and the notices issued to the public and to potential claimants, the order accompanying this opinion retains the phrase "all rental and other income generated by the property, or any property traceable thereto" in the description of Defendant Property.

persons claiming an interest in the Defendant Property for failure to timely claim, answer, or otherwise defend this action after notice was provided pursuant to 18 U.S.C. § 985, Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, and the Federal Rules of Civil Procedure." (ECF No. 11, at 1).  The United States now moves unopposed for default judgment and a final order of forfeiture.  (ECF Nos. 15; 16).

## II. Analysis

### A. Standard of Review

Motions for default judgment in civil forfeiture actions *in rem* are governed by Supplemental Rule G of the Supplemental Rules for Certain Admiralty and Maritime Claims and Rule 55 of the Federal Rules of Civil Procedure.  *United States v. $85,000 in U.S. Currency*, No. 10-cv-0371-WDQ, 2011 WL 1063295, at *1 (D.Md. Mar. 18, 2011).  Where there is inconsistency, the Supplemental Rules control.  *Id.*  While Supplemental Rule G sets out the procedural and substantive requirements for a civil forfeiture, Rule 55 sets out the standard of review for a default.

A court may enter default against defendant who "has failed to plead or otherwise defend."  Fed.R.Civ.P. 55(a).  The Fourth Circuit has a "strong policy" that "cases be decided on their merits," *Dow v. Jones*, 232 F.Supp.2d 491, 494 (D.Md. 2002) (citing *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir.

3

1993)), but "default judgment may be appropriate when the adversary process has been halted because of an essentially unresponsive party," *SEC v. Lawbaugh*, 359 F.Supp.2d 418, 421 (D.Md. 2005) (citing *Jackson v. Beech*, 636 F.2d 831, 836 (D.C. Cir. 1980)). The well-pleaded allegations are ordinarily taken as true, but the court must confirm that the plaintiff alleges "a legitimate cause of action." *Agora Fin., LLC v. Samler*, 725 F.Supp.2d 491, 494 (D.Md. 2010) (citation omitted); *Lawbaugh*, 359 F.Supp.2d at 422. "The court must then determine whether those allegations support the relief sought." *United States v. $12,735.53 in U.S. Currency*, No. 15-cv-3475-GJH, 2016 WL 6745725, at *2 (D.Md. Nov. 14, 2016).

    **B.   Jurisdiction and Venue**

The court is satisfied that it has subject matter jurisdiction because the United States commenced this forfeiture suit. 28 U.S.C. §§ 1345; 1355(a). The court has jurisdiction over the Defendant Property, and venue is proper, because the property is located in the District of Maryland and its alleged purchase occurred here. 28 U.S.C. §§ 1355(b)(1); 1395(b).

    **C.   The Complaint**

The Government's complaint satisfies the formal requirements of Supplemental Rule G(2). It is verified, (ECF Nos. 6 at 23; *see also* ECF No. 16-1), it describes the property with reasonable particularity and states its location, (ECF No. 6, ¶ 1; *see also*

ECF No. 15, ¶ 1), and it identifies the statute under which the forfeiture action is brought, (ECF No. 6, ¶ 1).

**D.   Notice**

Supplemental Rule G(4)(a)(i) requires the Government to notify the public of the forfeiture action "within a reasonable time after filing the complaint or at a time the court orders" and prescribes the content, means, and frequency of publication.  The notice must "(A) describe the property with reasonable particularity; (B) state the times . . . to file a claim and to answer; and (C) name the government attorney to be served with the claim and answer."  Supplemental Rule G(4)(a)(ii).  The means and frequency requirements can be satisfied by publishing the notice on an official government forfeiture website for at least thirty days.  Supplemental Rule G(4)(a)(iii)(B), (iv)(C).

In addition, the Government must provide notice to potential claimants and to the property owner.  Potential claimants, defined as "any person who reasonably appears to be a potential claimant on the facts known to the government[,]" must be sent notice of the action and a copy of the complaint.  Supplemental Rule G(4)(b)(i).  The notice must indicate when it was sent, the deadline for filing a claim, the deadline for filing an answer or Rule 12 motion after submitting a claim, and the name of the government attorney to be served.  Supplemental Rule G(4)(b)(ii).

"The notice must be sent by means reasonably calculated to reach the potential claimant." Supplemental Rule G(4)(b)(iii)(A).

The property owner must also be served notice "along with a copy of the complaint." 18 U.S.C. § 985(c)(1)(B)-(C); *see* Supplemental Rule G(3)(a). If the property owner cannot be served with notice because he or she "resides outside the United States and efforts at service pursuant to rule 4 of the Federal Rules of Civil Procedure are unavailing[,] . . . constructive service may be made in accordance with the laws of the State in which the property is located." *Id.* § 985(c)(2)(B).

The Government satisfied its notice requirements. It posted a copy of the Amended Complaint on the fence at the Defendant Property on August 27, 2020. (*See* ECF No. 9-2). Although it provides inconsistent publication dates, the Government also posted notice of this action for thirty consecutive days on www.forfeiture.gov within a reasonable time of initiating suit. (*See* ECF Nos. 10-3, at 1, 3 (identifying start of publication as August 27, 2020); 10-1 ¶ 16 (citing to ECF No. 10-3 but erroneously identifying October 17, 2020 as start date)).

The Government also notified the only potential claimant it identified, the Trust, which is also the sole owner of the Defendant Property. (*See* ECF No. 6, ¶¶ 17-18, 49). Zineb Jammeh is the trustee and Yahya Jammeh is successor trustee. (*Id.*, ¶ 18). Although it was never able to confirm that service was made on the

6

Trustees, the Government made extensive efforts to do so, including sending the required documents by certified mail to the Defendant Property, Ms. Jammeh's United States address, attorneys for the Trust, the property manager for the Defendant Property, and other persons allegedly affiliated with it. (ECF Nos. 10-1, ¶¶ 7-15; 10-2). The United States Ambassador also coordinated with the Republic of Equatorial Guinea, where the Jammehs allegedly reside, to have the requisite documents delivered to the Jammehs' residence. (ECF No. 13-1, at 1-2). Although the government of Equatorial Guinean appeared to confirm that notice was delivered, it stated formally that it was unable to locate the Jammehs. (*Id.*). Based on these substantial efforts, the court granted the United States' motion to permit constructive service pursuant to 18 U.S.C. § 985(c)(2)(B) in September 2021, finding that the Trustees of the MYJ Revocable Trust were served no later than March 4, 2021. (ECF No. 14).

    E.   **Forfeiture**

Under Supplemental Rule G(2)(f), the government must "state sufficiently detailed facts to support a reasonable belief that [it] will be able to meet its burden of proof at trial." At trial, the government is required to prove that the Defendant Property is subject to forfeiture by a preponderance of the evidence. 18 U.S.C. § 983(c); *$85,000 in U.S. Currency*, 2011 WL 1063295, at *2. "When 'the Government's theory of forfeiture is that the property

was used to commit or facilitate the commission of a criminal offense, or was involved in the commission of a criminal offense,' it must establish 'a substantial connection between the property and the offense.'" *Id.* (quoting 18 U.S.C. § 983(c)(3)).

"The hurdle imposed by the 'substantial connection' requirement is not a particularly high one." *United States v. One 2003 Mercedes Benz CL500*, No. 11-cv-3571-PWG, 2013 WL 3713903, at *4 (D.Md. July 15, 2013) (cleaned up). While the property "must have more than an incidental or fortuitous connection to criminal activity," it need not "be integral, essential, or indispensable to criminal activity[.]" *Id.* (cleaned up). "[R]easonable inferences may be drawn from the evidence presented to establish a nexus between the property and [the criminal] activity." *Id.* (citation omitted).

On a motion for default judgment, "the court does not require the government to establish the forfeitability of the property by a preponderance of the evidence." *United States v. One 2003 Mercedes Benz CL500*, No. 11-cv-3571-PWG, 2013 WL 5530325, at *2 n.4 (D.Md. Oct. 3, 2013) (cleaned up). "Rather, it reviews the complaint for facts sufficient to support a reasonable belief that the government will be able to prove forfeitability at trial by a preponderance of the evidence." *Id.* (cleaned up).

The Government asserts that Defendant Property is subject to forfeiture under 18 U.S.C. § 981 because it "constitut[es],

derive[s] from, or [is] traceable to the proceeds of 'specified unlawful activity,' as that term is defined in 18 U.S.C. § 1956(c)(7), or a conspiracy to commit 'specified unlawful activity[.]'" (ECF No. 6, ¶ 3 (citing 18 U.S.C. § 981(a)(1)(C))).[2] The most salient "specified unlawful activity" purportedly implicated is "an offense against a foreign nation involving . . . bribery of a public official, or the misappropriation, theft, or embezzlement of public funds by or for the benefit of a public official[.]"  18 U.S.C. § 1956(c)(7)(B)(iv).  In layman's terms, the Government says that Defendant Property is subject to forfeiture because it "was acquired with proceeds derived from illicit bribes and stolen public funds misappropriated by the former President of Gambia and his wife." (ECF No. 16, ¶ 10).

The Government alleges that Mr. Yummah violated The Gambia's Criminal Code prohibitions on public corruption and theft, excerpts of which it provided in an exhibit to the original complaint. *See* Fed.R.Civ.P. 44.1 ("In determining foreign law,

---

[2] It is not clear why the Government does not point to 18 U.S.C. § 981(a)(1)(B) which covers: "[a]ny property, real or personal, within the jurisdiction of the United States, constituting, derived from, or traceable to, any proceeds obtained directly or indirectly from an offense against a foreign nation, or any property used to facilitate such an offense, if the offense-- (i) involves . . . any other conduct described in section 1956(c)(7)(B); (ii) would be punishable within the jurisdiction of the foreign nation by death or imprisonment for a term exceeding 1 year; and (iii) would be punishable under the laws of the United States by imprisonment for a term exceeding 1 year[.]"

[a] court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence."). Under Gambian law, public corruption occurs where:

> any agent corruptly accepts or obtains . . . from any person, for himself or for any other person, any gift or consideration as an inducement or reward for doing or forbearing to do or for having done or forborne to do, any act in relation to his principal's affairs or business[.]

(ECF No. 1-1, at 5 (Gambian Criminal Code § 360)). The penalties for any violation of this section are enhanced "where the matter or transaction in relation to which the offence was committed was a contract or a proposal for a contract with the Government[.]" (*Id.* (Gambian Criminal Code § 361)).

Theft occurs when "[a] person fraudulently and without claim of right takes anything capable of being stolen, or fraudulently converts to the use of another person other than the general or special owner thereof anything capable of being stolen[.]" (ECF No. 1-1, at 3 (Gambian Criminal Code § 245(1))). A person acts fraudulently if he takes or converts something with "an intent permanently to deprive the general or special owner of the thing of it[.]" (*Id.* (Gambian Criminal Code § 245(2)(a))).

Taking the Government's allegations as true, it is reasonable to believe that it would be able to prove that Defendant Property is subject to forfeiture. First, it has clearly and specifically

10

alleged that Mr. Jammeh engaged in public corruption and theft under Gambian law. As two examples of public corruption, Mr. Jammeh allegedly granted continued monopoly rights over petroleum imports in exchange for at least $1 million and permitted a company to continue to manage government telecommunications services in exchange for up to approximately $5 million. (ECF No. 6, ¶¶ 31-40). As an example of theft, Mr. Jammeh alleged withdrew cash from The Gambia's Central Bank with little or no supporting paperwork. (*Id.*, ¶ 30). The Janneh Commission, which investigated the Jammeh regime's public corruption, found that Mr. Jammeh diverted over $300 million from public accounts. (*Id.*, ¶¶ 6-7). These and other allegations are supported not only by the allegations in the Government's amended complaint but also by Janneh Commission documents, which are included in the declaration attached to the Government's supplemental memorandum. (*See generally* ECF No. 16-1).

Second, Mr. Jammeh's violations of the Gambian public corruption and theft laws constitute "an offense against a foreign nation involving . . . bribery of a public official, or the misappropriation, theft, or embezzlement of public funds by or for the benefit of a public official" under Section 1956(c)(7)(B)(iv). The task of "defining the categorical boundaries" of these terms, *United States v. Chi*, 936 F.3d 888, 894 (9th Cir. 2019), appears rarely to come before courts. The Ninth Circuit does so by looking

to the "ordinary, contemporary, and common meaning" of the terms in Section 1956(c)(7)(B). *Id.*, at 895-97.

Under that analysis, "bribery of a public official" requires several elements. "First, it require[s] two parties—one who 'paid,' 'offered,' or 'conferred' the bribe, and one who 'received,' 'solicited,' or 'agreed to accept' it." *Chi*, 936 F.3d 897. "Second, it require[s] something to be given by the bribe-giver—either a 'private favor,' a 'pecuniary benefit,' or 'any benefit.'" *Id.* "And third, it require[s] something to be given by the bribe-taker—either 'official action,' 'the recipient's decision, opinion, recommendation, vote or other exercise of discretion as a public servant,' or 'a violation of a known legal duty as public servant.'" *Id.* Section 360 of the Gambian Criminal Code includes all three of these elements.

No court appears to have defined the categorical boundaries of "theft . . . of public funds by or for the benefit of a public official" under Section 1956(c)(7)(B)(iv). Black's Law Dictionary defines theft as "[t]he wrongful taking and removing of another's personal property with the intent of depriving the true owner of it." Under Model Penal Code § 223.2, "[a] person is guilty of theft if he unlawfully takes, or exercises unlawful control over, movable property of another with purpose to deprive him thereof." Section 245 of the Gambian Criminal Code defines theft in the same manner. There also can be little doubt that Mr. Jammeh was a

12

public official or that the money he allegedly stole constituted public funds.

Third, Defendant Property likely "constitut[es], derive[s] from, or [is] traceable to the proceeds of" Mr. Jammeh's unlawful conduct.  In addition to the pattern of corruption discussed above, the Government supports this finding, and demonstrates its ability to satisfy the "substantial connection" requirement, in two ways.  First, it alleges that Mr. Jammeh's lawful income could not have supported the purchase of Defendant Property.  Mr. Jammeh's annual income allegedly was $39,540 from January 2008 to December 2014.  (ECF No. 6, ¶ 26).  By contrast, the Trust allegedly purchased Defendant Property for $3.5 million.  (*Id.*, ¶ 49).  Second, the Government alleges that Mr. Jammeh either received bribes or stole funds shortly before making payments to purchase Defendant Property.  For example, $1 million was allegedly deposited into an account in the Trust's name by an employee of the petroleum company three days after its monopoly rights were reaffirmed and five days before the Trust made a $1 million payment into the escrow account used to purchase Defendant Property.  (*Id.*, ¶¶ 44-47).

It is likely that the Government would show by a preponderance of the evidence at trial that Defendant Property "constitut[es], derive[s] from, or [is] traceable to the proceeds of 'specified unlawful activity,' namely, "an offense against a foreign nation involving . . . bribery of a public official, or the

13

misappropriation, theft, or embezzlement of public funds by or for the benefit of a public official[.]"  18 U.S.C. §§ 981(a)(1)(C); 1957(c)(7)(B)(iv).[3]

Briefly, it is also likely, as the Government asserts, that Defendant Property is subject to forfeiture because it is "property involved in money laundering violations of 18 U.S.C. §§ 1956 and 1957."  (ECF No. 6, ¶ 3 (citing 18 U.S.C. § 1981(a)(1)(A))). Section 1957(a) requires showing that a person knowingly engaged in a monetary transaction with property that is criminally derived from specified unlawful activity and is worth more than $10,000. Section 1956(a)(1) can be satisfied by showing that a person knowingly conducts a financial transaction involving the proceeds of specified unlawful activity with the knowledge that the transaction is designed in whole or in part to conceal or disguise the source of the proceeds.  The only additional showing required under Sections 1956 and 1957 beyond what has already been discussed is Mr. Jammeh's knowledge.  Given the specificity and volume of

---

[3] The Government also points, (ECF No. 16, ¶ 10 n.1), to other specified unlawful activities: "interstate transportation of stolen or fraudulently obtained property" under 18 U.S.C. § 2314, "interstate receipt of stolen property" under 18 U.S.C. § 2315, and wire fraud under 18 U.S.C. § 1343.  *See* 18 U.S.C. § 1961(1) (identified as specified unlawful activity at 18 U.S.C. § 1956(c)(7)(A)).  It also gestures toward specified unlawful activity under 18 U.S.C. § 1956(c)(7)(D) but does not identify any offense listed there.  None of these bases for forfeiture need be analyzed because the Government has satisfied its burden under § 1956(c)(7)(B)(iv) as discussed above.

the Government's allegations regarding Mr. Jammeh's corrupt conduct, it would be a small step to draw the inference that he knew the house was bought with the proceeds of his bribery and theft and that its purchase was designed to conceal how those proceeds were gained.

The Government has satisfied its burden to subject Defendant Property to civil forfeiture under the Supplemental Rules for Certain Admiralty and Maritime Claims and the Federal Rules of Civil Procedure.

### III. Conclusion

For the foregoing reasons, the United States' motions for default judgment and a final order of forfeiture will be granted. A separate order will follow.

                                             /s/
DEBORAH K. CHASANOW
United States District Judge